MABEL V. METCALF, Plaintiff, v. STANLEY W. METCALF, Defendant.

Supreme Court, Special Term, New York County, November 15, 1949.

*David Vorhaus* and *Jesse Hemley* for plaintiff.

*Bernard S. Barron* and *George P. Halperin* for defendant.

HOFSTADTER, J. Pursuant to an order a separate trial of the issue arising upon the defendant's plea of the Statute of Limi-

tations as a defense to the plaintiff's second cause of action has been held before me. The facts have been stipulated and the question for decision is whether on the facts so stipulated the bar of the statute has been established. While, as will appear, the issue lies within narrow compass, a rather full statement of the events from which the litigation has developed lends to a readier understanding of the conflicting contentions of the parties.

The plaintiff and defendant were divorced in this State by final judgment entered in June, 1934. On March 3, 1934, during the pendency of the divorce action they entered into a separation agreement by which the defendant bound himself to pay the plaintiff for her support $15,000 a year. By a formal instrument executed simultaneously with and pursuant to the separation agreement the defendant created a trust, the income of which was to be paid to the plaintiff and credited against the $15,000 yearly payable by the defendant. Though the separation agreement provided for payment by the plaintiff in the first instance of all income taxes on the trust income and reimbursement to her by the defendant for any taxes so paid, as the result of a decision clarifying the tax liability on income from such trusts, it was agreed in an exchange of correspondence in December, 1934, and January, 1935, that the defendant, not the plaintiff, should himself report the trust income and pay the tax thereon.

The separation agreement made no reference to the income tax on that part of the $15,000 which was not derived from the trust. At the time of its execution alimony was not taxable to the wife nor were alimony payments deductible in the husband's tax return. The defendant reported as part of his taxable income all payments made to the plaintiff under the March 3, 1934, agreement and received by her from the trust, up to and including December 31, 1941, and paid the income tax thereon. Correspondingly, during these years the plaintiff neither reported the payments as part of her income nor paid any tax on them.

In 1942, when the Internal Revenue Code was amended a radical change was made in the treatment of alimony payments. For the system theretofore prevailing the amended code substituted provisions effective with respect to taxable years beginning after December 31, 1941, by which alimony became includible in the wife's income and deductible by the husband in computing his net income (U. S. Code, tit. 26, § 22, subd. [k] ; § 23, subd. [u]).

The plaintiff on November 13, 1942, demanded that the defendant reimburse her for all taxes she might thereafter be required to pay by reason of her receipt of payments under the separation agreement and from the trust. The defendant has never complied with this demand. Except for this demand and the exchange of correspondence in December, 1934, and January, 1935, already noted, no communications, oral or written, passed between the parties or their representatives, between March 3, 1934, and November 13, 1942, on the subject of the payment of taxes on the moneys derived by the plaintiff under the agreement or the trust.

The dispute over the tax liability has precipitated this action in which the plaintiff has claimed that the agreement of March 3, 1934, as written, imposes on the defendant the duty to pay her " $15,000 per annum net after the payment of any income taxes which plaintiff might be required to pay over and above such taxes as she would otherwise pay but for the addition to her personal income of the said $15,000." Alternately, in her second cause of action, she alleges that this was the actual agreement intended to be embodied in the written agreement of March 3, 1934, and that if that agreement does not so provide, the failure resulted from mutual mistake, and she accordingly prays for the reformation of the agreement and trust indenture to express the true agreement. On a motion to dismiss the complaint the Appellate Division has already held that the written agreement of March 3, 1934, as it stands, does not bind the defendant to pay income tax on anything other than the trust income (*Metcalf* v. *Metcalf*, 274 App. Div. 744).

We are here concerned solely with the second cause of action for reformation and the defense of the Statute of Limitations directed to this cause of action. The agreement sought to be reformed was entered into on March 3, 1934. This action was commenced on April 23, 1948, more than fourteen years later. The parties agree that the applicable period of limitation is ten years, but take issue on the question when the cause of action arose.

The defendant contends that the cause of action arose on March 3, 1934, when the agreement was executed. If the statute was tolled during the defendant's military service from April 6, 1942, to January 21, 1945, and his continuous absence from the State from September 29, 1935, to February 5, 1936, the ten-year period would be extended by three years, one month and nineteen days and the last day to begin the action would be April 23, 1947, just one year before the plaintiff began this action. It follows that if the defendant is correct in

his position that the statute began to run on March 3, 1934, then the action is barred, even though the plaintiff were given the full benefit of the tolling period.

The plaintiff, on the other hand, argues that since she was receiving $15,000 a year free of taxes until 1942 her right to reformation was moot and that as a result the statute did not begin to run against her until 1942. Thus the sole question to be determined is when the cause of action for reformation arose.

The general rule is that a cause of action for reformation of a written agreement on the ground of mutual mistake accrues immediately on the execution of the agreement. The Statute of Limitation, therefore, runs from the date of execution and its running is unaffected by the fact that the mistake may not have been discovered until some later date. (*Friedman* v. *Nagin,* 270 App. Div. 503; *Perry* v. *Fries,* 90 App. Div. 484; *Exkorn* v. *Exkorn,* 1 App. Div. 124). In *Baylis* v. *Baylis* (N. Y. L. J., June 27, 1946, p. 2539, col. 1) this rule was applied by Mr. Justice FENNELLY in an action to reform a separation agreement.

There is a well-recognized exception in favor of one in possession of real property under an instrument of title. The statute does not begin to run against his right "to reform that instrument until he has notice of a claim adverse to his under the instrument, or until his possession is otherwise disturbed" (*Hart* v. *Blabey,* 287 N. Y. 257, 263).

The plaintiff was free to institute an action to reform the agreement any time after March 3, 1934, whether there was anything then due or not (*Thomas* v. *Harmon,* 122 N. Y. 84, 90). She had a presently enforcible right whether she saw fit to assert it or not. The circumstance that, because of the existing tax law, the need to seek reformation may not have occurred to the plaintiff or may have seemed too remote, does not alter the essential nature of her right. The policy of the statute forbids such shifting and uncertain tests of its applicability (*Arnold* v. *Mayal Realty Co.,* 299 N. Y. 57, 60). Had the plaintiff sought reformation before the tax law was changed in 1942 the action could not be held premature for "The same test must be applied to a challenge that the action is stale as to a challenge that the action has been brought prematurely" (*Schmidt* v. *Merchants Despatch Transp. Co.,* 270 N. Y. 287, 301). The considerations which determine the maintainability of an action for a declaratory judgment obviously have no relevancy here.

I have not overlooked cases such as *Ulman* v. *Equitable Life Assur. Soc.* (161 App. Div. 708) and *Vogel* v. *City Bank Farmers Trust Co.* (152 Misc. 18) pressed on me by the plaintiff. They

are distinguishable on their peculiar facts and, therefore, are not controlling.

In my opinion the defendant has established the defense of the Statute of Limitations pleaded in his amended answer in bar of the cause of action to reform the separation agreement of March 3, 1934, and I so find. The foregoing constitutes my decision.